**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GARY ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20 C 439** |
| | ) | |
| **CHERYL ANDERSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Gary Anderson has sued Cheryl Anderson, his ex-wife, for breach of contract based on a promissory note entered into as part of their Marital Settlement Agreement. Because the parties share the same last name, this Court will refer to the parties by their first names. Cheryl has asserted three affirmative defenses: 1) Gary released her from the obligations of the note; 2) Gary is estopped from bringing this action due to oral representations he made to her and their three children; and 3) Gary waived his right to enforce the note. Both parties have moved for summary judgment.

### Background

The following facts are undisputed except where otherwise noted. Gary and Cheryl were previously married but divorced in September 2015. At that time, Cheryl was the owner of a company known as Millennium Medical Management Resources, Inc. During the divorce, in order to maintain sole ownership of the company, Cheryl offered to pay Gary $3,450,000 in exchange for any interest that he had in Millennium.

The buyout agreement was outlined in the Marital Settlement Agreement, which was executed in August 2015.

In conjunction with the Marital Settlement Agreement, the parties executed a promissory note for $3,450,000.  The note was partially secured by two mortgages on Cheryl's properties:  $1,150,000 secured by 420 North Evergreen Avenue, Elmhurst, Illinois (the Illinois property)[1] and $1,000,000 secured by 11141 Lake Shore Drive, Berrien Springs, Michigan (the Michigan property).  The rest of the note was unsecured. Under the terms of the promissory note, Cheryl was to make annual payments to Gary on January 31 of each year, starting in 2016 and ending in 2021.  Cheryl made timely payments in 2016 and 2017, but she experienced trouble making the January 2018 payment and obtained a loan from her brother, Craig Laughton, to pay the debt.

Shortly after making the January 2018 payment, Cheryl attempted to obtain a home equity loan on the Illinois property for $500,000 to pay back the money that Laughton had loaned her.  To facilitate approval of the home equity loan, Cheryl asked Gary to lift his lien on the Illinois property.  She offered to issue Gary a new mortgage on the Illinois property after she received the home equity loan.  Cheryl's attorney drafted both the release and the new mortgage, and Cheryl e-mailed the documents to Gary in March 2018.  On March 5, 2018, Gary executed a release of mortgage for the Illinois property, which states that "the mortgage dated September 14, 2015 . . . together with the debt secured by said mortgage, has been fully paid, satisfied, released and discharged, and that the property secured thereby has been released from the lien of

---

[1] The note and both parties state that the amount secured by the Illinois mortgage is $1,150,000, but the mortgage itself states that it secures only $1,000,000.  For the purposes of this decision, this Court will accept the parties' agreed upon amount.

such mortgage." Dkt. no. 1-1 at ECF p. 2 of 4. Cheryl was unable to secure a home equity loan. But the parties never executed the new mortgage for the Illinois property.

Here is where the parties start to disagree. In July 2018, Gary and Cheryl met to discuss matters concerning their three children, Grace, Peter, and Erik.[2] Cheryl contends that during the meeting, Gary offered to release Cheryl from her obligations under the note in exchange for her support in relocating Peter and Erik to Florida to live with him. Gary concedes that he and Cheryl met to discuss their children but denies that he ever agreed to release Cheryl from the note. On the same day of the meeting, Cheryl sent an e-mail to Laughton describing the purported offer from Gary.

Over the course of the summer of 2018, the parties had several meetings with their children. Both parties agree that the meetings took place, but they dispute the contents of the meetings. Cheryl alleges that, in a meeting at a Panera Bread restaurant, Gary told Grace that he had released Cheryl from future obligations under the promissory note. Cheryl also alleges that Gary made similar statements to Peter during a meeting at a Subway restaurant. On a third occasion, the parties and their three children met at the Illinois property where, according to Cheryl, Gary told the children that he had released Cheryl from the note. Gary denies making any such statements on any of these occasions.

On August 12, 2019, Peter and Erik moved to Florida to live with Gary. On August 23, 2019, Gary made his first demand for payment under the note purportedly due January 2019. Gary filed this suit on January 20, 2020. Cheryl has not made any

---

[2] The three children were, respectively, ages 11, 11, and 12 as of the date of the Marital Settlement Agreement in August 2015 and thus were, presumably, ages 14, 14, and 15 as of July 2018.

payments under the note since 2018.

## Discussion

Gary and Cheryl have filed cross-motions for summary judgment. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When parties file cross-motions for summary judgment, courts "construe all inferences in favor of the party against whom the motion under consideration is made." *Cremation Soc'y of Ill., Inc. v. Int'l Bhd. of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017) (citation omitted).

### A.    Count 1

Gary has moved for summary judgment on Count 1, a breach of contract claim based on Cheryl's failure to make the January 2019 payment (and, by now, the remaining payments due after that date). Cheryl does not deny that she did not make this payment; rather, she asserts three affirmative defenses to Gary's claim—release, estoppel, and waiver.[3] Cheryl has moved for summary judgment on these defenses. For the following reasons, the Court denies both parties' motions.

---

[3] In her original answer, Cheryl asserted two affirmative defenses, release and accord and satisfaction, but she later amended her answer to assert the three affirmative defenses listed above. In his motion for summary judgment, Gary addresses only the two defenses listed in Cheryl's original answer rather than the three in her amended answer. Gary does address all three of Cheryl's affirmative defenses in his other briefing. Regardless, the Court's analysis is the same. It concludes that Gary has not met his burden to show that, with respect to Cheryl's three affirmative defenses, there is no genuine dispute regarding any material fact.

### 1.    Release

Cheryl's first affirmative defense is that Gary released her from the obligations of the note.  Although the parties' briefs have considerably obfuscated the issue, two separate events are in dispute.  First, Gary signed a written release of the mortgage on the Illinois property in March 2018.  Cheryl argues that this document releases not only the mortgage on the Illinois property but also the obligations under the note.  Gary argues that the release of mortgage does not affect the obligations under the note.  Second, Cheryl alleges that Gary made an oral agreement in July 2018 releasing Cheryl from the obligations of the note in exchange for her help and support relocating their sons to Florida to live with Gary.  Gary disputes the existence of this agreement.

### a.    March 2018 release of mortgage

The interpretation of a release is governed by contract law.  *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667 (1991).  Courts must interpret the provisions of a contract to give effect to the parties' intent.  *Va. Sur. Co. v. N. Ins. Co. of N.Y.*, 224 Ill. 2d 550, 556, 866 N.E.2d 149, 153 (2007).  The parties' intent can be determined through the language of the release, as well as the circumstances surrounding its execution.  *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 838-39, 648 N.E.2d 317, 321 (1995).  In fact, "[n]o form of words prevents a reviewing court from inquiring into surrounding circumstances to determine whether a release was fairly made and accurately reflects the parties' intentions."  *Id.* at 839, 648 N.E.2d at 321 (citation omitted).

Turning to the language of the release first, its text supports Cheryl's interpretation that it releases not just the mortgage but also the underlying note.  The

release states, "the mortgage dated September 14, 2015 . . . *together with the debt secured by said mortgage*, has been fully paid, satisfied, released and discharged, and that the property secured thereby has been released from the lien of such mortgage." Dkt. no. 1-4 at ECF p. 2 of 3 (emphasis added). This language reflects an intent to release not only the mortgage on the Illinois property but also the obligations under the note.

Gary's response to this argument misses the mark. He cites two Illinois cases for the proposition that a mortgage and the note it secures are separate contracts, arguing that the release of the former does not automatically release the obligations of the latter. *LP XXVI, LLC v. Goldstein*, 349 Ill. App. 3d 237, 811 N.E.2d 286 (2004); *Abdul-Karim v. First Fed. Sav. & Loan Ass'n*, 101 Ill. 2d 400, 462 N.E.2d 488 (1984). That's true, but it is not what Cheryl argues. Her argument, which the Court finds persuasive, is that this particular release of the mortgage also releases the underlying note because it expressly says so when it states that it is releasing "the debt secured by said mortgage" in addition to the mortgage itself. Based on the language of the note, a reasonable jury could determine that it releases the obligations under the note at least to the extent the note is secured by the mortgage.

Even so, as indicated earlier, the language of a release is not dispositive. The circumstances surrounding the execution of the release support Gary's contention that the parties did not intend for the release of mortgage to release the underlying note, at least not for all time. Cheryl's own statements and actions undermine the contention that the parties intended to release the note for once and for all. Cheryl admitted that she intended to execute a new mortgage on behalf of Gary after she obtained a home

equity loan and that it would be reasonable for Gary to assume that he would be receiving a new mortgage.  Indeed, Cheryl instructed her attorney to draft a new mortgage, and she sent it to Gary in the e-mail containing the release.  Additionally, there is evidence that Cheryl herself did not actually intend for the release to release the underlying note.  During her deposition, Cheryl indicated that she believed that the mortgage on her Michigan property remained in effect and that she did not believe that she had been released from the note until later, in July 2018, when the parties purportedly so agreed.  Taking all the evidence into consideration, a reasonable jury could find that the parties did not intend, in signing the release, to release the underlying note.

**b.     July 2018 oral agreement**

As an initial matter, the Court addresses Gary's contention that the July 2018 oral agreement claimed by Cheryl—if it existed—cannot release her from the note because the agreement was not made in writing.  Gary's argument runs contrary to well-settled Illinois law that a written contract *can* be modified by subsequent oral agreement, even if the contract expressly precludes oral modifications.  *See, e.g.*, *Tadros v. Kuzmak*, 277 Ill. App. 3d 301, 312, 660 N.E.2d 162, 170 (1995); *A.W. Wendell & Sons, Inc. v. Qazi*, 254 Ill. App. 3d 97, 105, 626 N.E.2d 280, 287 (1993).  Cheryl makes this point, at least in passing, when she correctly states that "[p]arties to a contract can also waive the right to enforce anti-oral modification clauses."  Dkt. no. 45-1 at ECF p. 13 of 15.  Thus the issue is whether Gary did, in fact, orally modify the note as Cheryl contends.

To be perfectly blunt, neither party had a viable basis to move for summary judgment on this point.  Both motions completely disregard the basic principle that on a

summary judgment motion, a court does not weigh the evidence but rather assesses only whether material facts are genuinely disputed. Here they quite plainly are. Each side does back-flips trying to show that the evidence is so one-sided as to warrant summary judgment in its favor. To this end, each side spend pages presenting and bolstering its own version of the events while attempting to discredit the other side's. This serves only to demonstrate beyond peradventure that there are genuine disputes of material fact.

In support of the existence of the oral agreement, Cheryl points to her own statements made during her deposition, in her affidavit, and in an e-mail she sent to Laughton. During her deposition, Cheryl testified that Gary made a proposal to her at the July 2018 meeting, offering to "forgive the remainder of the debt" if she allowed their two sons to move out of state with him. Dkt. no. 41-4 at ECF p. 45 of 77. She makes similar claims in her affidavit. Dkt. no. 45-4 at ECF p. 4 of 6. Cheryl also outlined the purported agreement in an e-mail she sent to Laughton on the day of the July 2018 meeting.

In addition to her own statements, Cheryl points to those of two of their children. Grace and Peter claim during their depositions that Gary told them, on three separate occasions during the summer of 2018, that he would not seek any more money from Cheryl. Grace states that she, Cheryl, and Gary met at a Panera Bread restaurant where Gary "assured [Grace] that he would not take away [her] house and not request any more money from [Cheryl]." Dkt. no. 45-9 at ECF p. 13 of 27. Peter recounts Gary making similar statements during a meeting between Gary, Cheryl, and Peter at a Subway restaurant. Dkt. no. 45-10 at ECF p. 9 of 38 ("[H]e told mom . . . I'll let you free

8

as long as Peter can move down with me.").  Both children recall a meeting involving Gary, Cheryl, Grace, Peter, and Erik at the Illinois property during which Gary told the children that Cheryl no longer owed him any money.[4]

In response, Gary argues that Cheryl's statements are self-serving.  As for Grace, Gary points out holes in her recollection, specifically that aside from the statement Cheryl cites, Grace could not remember anything else said at the meeting. Finally, Gary challenges the credibility of Peter's statement, pointing out that he admitted having no knowledge of any financial obligation Cheryl owed to Gary and that he misremembered the timing of both the meeting at Subway and the meeting at the Illinois property.

Just as importantly for present purposes, however, Gary offers affirmative testimony that contradicts Cheryl's version of the July 2018 meeting and that would support a jury finding that the claimed oral agreement was never made.  First, Gary states in an affidavit that "I never advised Cheryl that I would forgive the remaining balance under the Note, or alter or reduce her obligations thereunder in any manner." Dkt. no. 41-3 at ECF p. 4 of 5.  Second, Gary cites Erik's deposition testimony, in which he contradicts the statements of Cheryl, Peter, and Grace.  Erik testified that he did not "ever remember anyone telling [him] that [his] mother had been released from a note" or "recall any meeting that occurred between all three children and both parents regarding the finances."  Dkt. no. 47-1 at ECF p. 17 of 34.  In response, Cheryl dismisses Erik's statements by arguing that she and Erik have a strained relationship and that Erik's

_____

[4] Cheryl also cites testimony by Laughton about the meeting, but these quite plainly are inadmissible hearsay, as he was not present at the meeting and learned about it from Cheryl.

desire to remain neutral in the conflict between the two parties is the "driving force" behind Erik's lack of recollection.  Dkt. no. 48 at ECF p. 4 of 15.  But that simply reinforces the proposition that the facts are genuinely disputed.

In sum, there are a myriad of disputes regarding facts material to the release defense.  There is sufficient evidence in support of each party to allow a reasonable jury to find in his or her favor.  Thus summary judgment is inappropriate.

### 2.    Estoppel

In Cheryl's second affirmative defense, she contends that Gary is estopped from bringing this suit.  Specifically, Cheryl contends that during the July 2018 meeting, Gary made material misrepresentations to her, on which she detrimentally relied.  The crux of the issue is the same as the one just discussed:  whether Gary promised Cheryl that he would release her from the obligations under the note in exchange for her help relocating Peter and Erik to Florida.  Because there are genuine disputes regarding the existence of the July 2018 agreement, the Court denies summary judgment on this defense as well.

### 3.    Waiver

Cheryl's final affirmative defense is that Gary waived his right to enforce the note.  Waiver is the "intentional relinquishment of a known right."  *Lempera v. Karner*, 79 Ill. App. 3d 221, 223, 398 N.E.2d 224, 225 (1979) (citation omitted).  A party claiming an implied waiver must prove "a clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights."  *In re Nitz*, 317 Ill. App. 3d 119, 130, 739 N.E.2d 93, 103 (2000).  "Where the material facts are in dispute, or where reasonable minds might differ in the inferences to be drawn from undisputed facts, the existence of

waiver or estoppel is a question of fact." *Lake Cnty. Grading Co. of Libertyville v. Advance Mech. Contractors, Inc.*, 275 Ill. App. 3d 452, 463, 654 N.E.2d 1109, 1119 (1995).

Cheryl argues that Gary waived his right to enforce the note when he entered into the July 2018 oral agreement and failed to make a demand for the January 2019 payment until August 23, 2019—eleven days after the parties' sons, Erik and Peter, moved to Florida. Gary responds that he was not obligated to send a demand letter to Cheryl, as she had waived "[d]emand, presentment, protest and notice of non-payment and protest" in the note. Dkt. no. 1-1 at ECF p. 2 of 4. He also argues that "any delay in sending a letter which Plaintiff was not required to send cannot be seen as a waiver of Plaintiff's rights under the Note." Dkt. no. 47 at ECF p. 8 of 10.

The Court agrees that delay alone would not be enough to constitute a waiver. But Cheryl's argument is not based only on Gary's failure to send a demand letter until August. Rather, Cheryl argues that this delay, coupled with Gary's purported agreement to release Cheryl from the note, evidences an intention inconsistent with one to enforce his rights under the note. But that simply takes us back to the existence of the purported July 2018 agreement, which unquestionably involves disputed factual issues. For the reasons discussed in the previous section, summary judgment is inappropriate.

**B.    Count 2**

Both parties also seek summary judgment on Count 2 of Gary's complaint, in which he seeks to reform the March 2018 release of mortgage to reduce the value of the mortgage interest by $500,000 instead of releasing the entire principal. Reformation

of a contract is appropriate only when the party seeking reformation provides clear and convincing evidence demonstrating that the document does not reflect the true intention of the parties. *Booth v. Cole Corp.*, 121 Ill. App. 2d 77, 83, 257 N.E.2d 265, 269 (1970). Although courts presume that a written agreement expresses the intention of the parties, the moving party can defeat this presumption by showing either a mutual mistake or a mistake by one party and fraud by the other. *319 S. La Salle Corp. v. Lopin*, 19 Ill. App. 3d 285, 290, 311 N.E.2d 288, 291 (1974). Fraud is generally defined as "anything intended to deceive, including all acts, omissions and concealments involving a breach of legal or equitable duty, trust or confidence resulting in damage to another." *Gary-Wheaton Bank v. Burt*, 104 Ill. App. 3d 767, 773, 433 N.E.2d 315, 322 (1982).

The facts material to whether Cheryl fraudulently induced Gary to sign the release are genuinely disputed. Gary contends that the evidence shows that Cheryl had no intention of executing the new mortgage and only represented otherwise to deceive him into signing the release. In this regard, Gary cites Cheryl's refusal to follow through with the new mortgage after she was denied a home equity loan. For her part, Cheryl contends that the July 2018 oral agreement nullified any obligation to execute a new mortgage. Thus Gary's reformation claim depends, in part at least, on the existence of the oral agreement claimed by Cheryl. Each side's theory is viable and is supported by evidence that would permit a reasonable factfinder to find in its favor. As such, summary judgment for either party is inappropriate.

## Conclusion

For the foregoing reasons, the Court denies both parties' motions for summary

judgment [dkt. nos. 41 & 45] and sets the case for a telephonic status hearing on September 7, 2021 at 9:05 a.m. to set a trial date and discuss the possibility of settlement.  The following call-in number will be used:  888-684-8852, access code 746-1053.  Counsel should wait for the case to be called before announcing themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  August 31, 2021